IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD BRASS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1621 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 30th day of March, 2015, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending applications for disability insurance benefits and supplemental security income on December 27, 2010, alleging a disability onset date of December 10, 2010, due to Graves disease,[1] high blood pressure, migraines and knee problems. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on July 11, 2012, at which plaintiff, represented by counsel, appeared and testified. On July 26, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On September 11, 2013, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 34 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). He has at least a high school education and has past relevant work experience as a store laborer, floor waxer, material handler, industrial truck operator, product machine tender, hoisting laborer and security guard, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of thyroid disorder, Graves disease, knee and back pain, hypertension, depression and anxiety, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the sedentary exertional level but with numerous restrictions necessary to

---

[1] Graves disease is an autoimmune disorder that leads to over-activity of the thyroid gland (hyperthyroidism). Graves disease is the most common cause of hyperthyroidism. It is due to an abnormal immune system response that causes the thyroid gland to produce too much thyroid hormone. http://www.nlm.nih.gov/medlineplus/ency/article/000358.htm.

accommodate his physical and mental impairments. (R. 26).² Taking into account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon his age, education, work experience and residual functional capacity, including document preparer, assembler and escort vehicle driver. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform any of his past relevant work, he is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.³ 20 C.F.R.

---

² Specifically, the ALJ found that plaintiff "has the residual functional capacity to perform sedentary work except " he is limited to performing postural adaptations such as stooping, kneeling, crawling, crouching, balancing and climbing, on an incidental basis (defined as occurring not more than 1/6 of a routine eight hour work shift), and should avoid hazards such as unprotected heights and dangerous machinery. In addition, [he] is relegated to simple, routine, repetitive tasks involving no independent judgment or discretion, no piece work production rate pace, no interaction with the general public, and incidental interaction with co-workers." (R. 26).

³ The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can

AO 72
(Rev. 8/82)

§§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises three challenges to the ALJ's determination that plaintiff is not disabled: (1) the ALJ improperly evaluated the medical evidence; (2) the ALJ's residual functional capacity finding failed to account for all of plaintiff's work-related mental limitations; and, (3) the ALJ's residual functional capacity finding failed to account for any limitations arising from plaintiff's Graves disease. Upon review, the court is satisfied that the ALJ's residual functional capacity finding is supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly evaluated the medical evidence. Specifically, plaintiff contends that the ALJ erred in rejecting the opinion of consultative psychologist Dr. Steven Pacella, who examined plaintiff on June 15, 2011, and instead in accepting the opinion of the state agency reviewing psychologist Dr. John Rohar. The court finds no error in the ALJ's evaluation of the medical evidence.

The rules by which the ALJ is to evaluate the medical evidence are well-established under the Social Security Regulations and the law of this circuit. Opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight.

---

perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(c) and 416.927(c). Importantly, the opinion of any physician, including a treating physician, on the issue of what an individual's residual functional capacity is or on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-5p.

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. The ALJ specifically addressed the consultative report from Dr. Pacella and adequately explained why he was assigning "little weight." to the opinion insofar as it indicated marked limitations in several areas of mental functioning[4] and "no weight" insofar as it suggested an inability to perform all work activity. (R.29). In particular, the ALJ noted that the medical evidence does not show the level of disability that Dr. Pacella indicated and he therefore found that Dr. Pacella's assessment "overstates the degree of limitation." (Id.)

The evidence of record as outlined by the ALJ in his opinion supports his evaluation of Dr. Pacella's assessment. (R. 28-30). Although plaintiff argues that the ALJ failed to explain adequately his evaluation of that assessment or to point to the evidence in the record that contradicts it, the ALJ did a thorough job in the decision of detailing the medical evidence. In particular, he noted the results of Dr. Pacella's own mental examination of plaintiff and his findings that plaintiff "was oriented, alert, adequately responsive, non anxious and maintained good eye contact," and that his memory was intact. (R. 29). He also pointed out that Dr.

---

[4] Specifically, Dr. Pacella indicated that plaintiff has marked limitations in the ability to interact with co-workers and to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. (R. 561)

Pacella had indicated that plaintiff was capable of understanding, remembering and carrying out short, simple instructions, which contradicted his opinion that plaintiff could not perform any work activity. (R. 29). The ALJ's explanation is consistent with Dr. Pacella's own report in which he found that plaintiff is "able to understand, retain and follow instructions," that, although he had some difficulty with concentration, he was not inattentive, and that he acknowledged "no chronic problems with peers or authority figures, on or off the job." (R. 558).

In addition, the ALJ also discussed plaintiff's outpatient treatment at Turtle Creek Valley Mental Health and Mental Retardation in October of 2011 and the medical records from Western Psychiatric Institute and Clinic and determined that they also supported the ALJ's residual functional capacity finding rather than the debilitating limitations indicated by Dr. Pacella. (R. 29-30).

Furthermore, the ALJ did not err in giving more credence to the residual functional capacity assessment of Dr. Rohar, the state agency reviewing physician, who concluded that plaintiff could perform simple, routine, repetitive work in a stable environment. (R. 73). Pursuant to the Regulations, state agency medical consultants are considered to be "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §§404.1527(e)(2)(i) and 416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §§404.1527(e)(2)(ii) and 416.927(e)(2)(ii); SSR 96-6p. The ALJ did so here and, having concluded that Dr. Rohar's report was more consistent with the totality of the evidence than the findings of Dr. Pacella, he properly gave Dr. Rohar's opinion greater weight. (R. 30).

To the extent plaintiff contends that the ALJ improperly relied on Dr. Rohar's assessment because it was issued a year before the hearing and thus was not based on the full record, that argument is without merit. The Third Circuit Court of Appeals has rejected the argument that the mere lapse of time between a state agency physician's review of the record and the subsequent administrative hearing makes it improper for the ALJ to rely on the opinion. *See* Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (recognizing that "[the Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it"). Rather, it is for the ALJ to determine whether subsequent medical evidence impacts the earlier findings. Id. (citing SSR 96-6p). Here, it is clear that the ALJ considered all of the medical evidence, including the evidence from plaintiff's third hospitalization and his outpatient treatment that occurred after Dr. Rohar's report, but determined that the subsequent medical evidence did not alter Dr. Rohar's finding that plaintiff could perform simple, routine, repetitive work in a stable environment. (R. 29-30). Accordingly, the ALJ did not err in relying on Dr. Rohar's opinion.

In sum, the ALJ did a thorough job in his decision in setting forth the relevant medical evidence and explaining why he rejected or discounted any evidence. The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff's second argument is that the ALJ's residual functional capacity finding[5] failed to incorporate all of plaintiff's work-related mental limitations. Upon review of the relevant records and the ALJ's decision, this court is satisfied that the ALJ's residual functional capacity finding and resultant hypothetical to the vocational expert adequately accommodate all of plaintiff's mental limitations supported by the record.

Here, plaintiff contends that the ALJ's residual functional capacity finding conflicts with his own step 3 finding that plaintiff has "moderate" difficulties in social functioning and concentration, persistence and pace. The court disagrees, as the ALJ's residual functional capacity finding, which limits plaintiff to "simple, routine, repetitive tasks involving no independent judgment or discretion, no piece work production rate pace, no interaction with the general public, and incidental interaction with co-workers," is more than adequate to address plaintiff's moderate limitations in both social functioning and concentration, persistence and pace. *See, e.g.*, Parks v. Commissioner of Social Security, 401 Fed.Appx. 651, 655-56 (3d. Cir. 2010)( hypothetical limiting claimant to performing simple, unskilled work with restricted social interactions adequate to account for moderate limitations in social functioning and concentration, persistence and pace); McDonald v. Astrue, 293 Fed.Appx. 941, 946-47 (3d Cir. 2008)(hypothetical limiting claimant to "simple, routine tasks" adequate to accommodate

---

[5] Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by her impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); 20 C.F.R. §§404.1545(a)(1) and 416.945(a)(1). Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work-setting on a regular and continuing basis, which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(3)-(4) and 416.945(a)(3)-(4); SSR 96-8p. In regard to mental abilities, the ALJ first must assess the nature and extent of the claimant's mental limitations and restrictions and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. §§404.1545(c) and 416.945(c). The ALJ's residual functional capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

"moderate" limitations in concentration, persistence and pace); Menkes v. Astrue, 262 Fed.Appx. 410, 412-13 (3d Cir. 2008)(no error in hypothetical restricting claimant to "simple routine tasks" to account for moderate limitations in concentration, persistence and pace).

Plaintiff's final argument is that the ALJ's residual functional capacity finding also failed to incorporate any limitations arising from plaintiff's Graves disease. In this regard, plaintiff contends that despite the ALJ's finding that plaintiff's Graves disease is a severe impairment, the ALJ failed to mention Graves disease in assessing plaintiff's residual functional capacity or to include any limitations arising from it. Plaintiff's argument is belied by the record.

Although plaintiff contends that the ALJ "never mentioned" Graves disease in assessing plaintiff's residual functional capacity, the record shows that the ALJ spent two pages of his decision discussing plaintiff's physical impairments, including Graves disease. (R. 27-28). Specifically, the ALJ noted that a March 2011 report showed that plaintiff's "Graves hyperthyroidism was controlled on Tapetzella" and he further noted that plaintiff's treatment has been "essentially routine and conservative" and that medications "have been relatively effective in controlling his symptoms." (R. 27). In addition, the ALJ expressly acknowledged that plaintiff has "some limitations related to back and knee pain, a thyroid disorder, Graves disease, and hypertension, but not below the sedentary level."

Moreover, contrary to plaintiff's assertion that the ALJ failed to incorporate any limitations into the residual functional capacity finding to account for his physical impairments, including Graves disease, the ALJ's residual functional capacity finding "limits [plaintiff] to sedentary work requiring only incidental postural adaptations and the common sense avoidance

of work place hazards." (R. 28). The ALJ's decision establishes that he adequately considered plaintiff's Graves disease in assessing residual functional capacity.

In sum, the court is satisfied that the ALJ's residual functional capacity finding is supported by substantial evidence as outlined in the decision and that the ALJ's hypothetical to the vocational expert incorporating that residual functional capacity finding adequately accounted for all of plaintiff's mental and physical limitations that are supported by the objective evidence. Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)(RFC and hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record). Accordingly, the vocational expert's response to that hypothetical indicating that, despite those restrictions, plaintiff retains the ability to perform the identified sedentary jobs, constitutes substantial evidence supporting the ALJ's finding that plaintiff is not disabled.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

                                                    s/Gustave Diamond
                                                    Gustave Diamond
                                                    United States District Judge

cc:      Karl E. Osterhout, Esq.
         521 Cedar Way
         Suite 200
         Oakmont, PA 15139

         Paul Kovac
         Assistant U.S. Attorney
         700 Grant Street
         Suite 4000
         Pittsburgh, PA 15219